**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| WASEEM DAKER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 1:03-CV-02481-RWS |
| v. | : | |
| | : | |
| JOE FERRERO, et al., | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

This case comes before the Court for resolution of the following: (i)
Plaintiff's Motion to Compel Compliance with Fifth Set of Requests for
Production [117]; (ii) Plaintiff's Motion to Correct\Withdraw Plaintiff's Third
Motion to Compel Discovery [118]; (iii) Plaintiff's Motion to Extend Time to
File Reply to: (1) Defendants' Response to Reply in Support of Second Motion
for Preliminary Injunction, and (2) Defendants' Response to Motion for Default
Judgment, Sanctions, or Contempt [121]; (iv) Plaintiff's Motion for Subpoenas
[126]; (v) Plaintiff's Motion to Extend Time to File Reply in Support of
Plaintiff's Third Motion for Preliminary Injunction [127]; (vi) Plaintiff's Motion

to Strike [129]; (vii) Plaintiff's Motion to File Fourth Amended and

Supplemental Complaint [133]; (viii) Plaintiff's Motion for Contempt and

Sanctions [134]; (ix) Plaintiff's Fourth Motion for Preliminary Injunction [138];

(x) Plaintiff's Second Motion for Contempt and Sanctions [142]; (xi) Plaintiff's

Third Motion for Contempt and Sanctions [143]; (xii) Plaintiff's Fifth Motion

for Preliminary Injunction [144]; (xiii) Plaintiff's Sixth Motion for Preliminary

Injunction [145]; (xiv) Plaintiff's Motion to Stay Schedule for Plaintiff's Motion

for Summary Judgment [146]; (xv) Plaintiff's Second Motion for Subpoenas

[153]; (xvi) Plaintiff's Motion to Add Defendants [154]; (xvii) Plaintiff's Motion

to Stay Consideration of (1) Plaintiff's Motion for Contempt and Sanctions, (2)

Plaintiff's Second Motion for Contempt and Sanctions, (3) Plaintiff's Third

Motion for Contempt and Sanctions, and (4) Plaintiff's Fifth Motion for

Preliminary Injunction, Pending Reply by Plaintiff [155]; (xviii) Plaintiff's

Renewed Original Motion for Default Judgment [162]; (xix) Plaintiff's Second

Motion for Default Judgment [163]; (xx) Plaintiff's Sixth Motion to Compel

Discovery [164]; (xxi) Plaintiff's Seventh Motion to Compel Discovery [165];

(xxii) Plaintiff's Motion for Additional Discovery [166]; (xxiii) Plaintiff's Motion

to Strike (1) Defendants' Response to Plaintiff's Motion for Contempt and

2

Sanctions, and (2) Defendants' Response to Plaintiff's Fourth Motion for Preliminary Injunction, as Untimely [167]; (xxiv) Plaintiff's Fourth Motion for Contempt and Sanctions [170]; (xxv) Plaintiff's Fifth Motion for Contempt and Sanctions [171]; (xxvi) Defendants' Motion to Dismiss [174]; (xxvii) Defendants' Motion to Stay Consideration of Plaintiff's Motions Currently Pending before this Court until Defendants' Motion to Dismiss Is Ruled Upon [175]; (xxviii) Plaintiff's Motion to Extend Time to File Reply in Support of Plaintiff's: (1) Renewed Original Motion for Default Judgment, (2) Second Motion for Default Judgment, (3) Motion for Additional Discovery, and (4) Motion to Strike (1) Defendants' Response to Plaintiff's Motion for Contempt and Sanctions, and (2) Defendants' Response to Plaintiff's Fourth Motion for Preliminary Injunction, as Untimely [177]; (xxix) Plaintiff's Motion to Extend Time to Respond to Defendants': (1) Motion to Dismiss, and (2) Motion to Stay Consideration of Plaintiff's Motions [178]; (xxx) Plaintiff's Eighth Motion to Compel Discovery [180]; (xxxi) Plaintiff's Motion to Withdraw Plaintiff's Motion to File Fourth Amended and Supplemental Complaint Without Prejudice [189]; (xxxii) Plaintiff's Motion to File Fourth Amended and Supplemental Complaint [190]; (xxxiii) Defendants' Objection to Plaintiff's *in Forma*

3

*Pauperis* Status and Motion for Payment of Filing Fees [191]; and (xxxiv)

Plaintiff's Motion to Interview Witnesses [196].  The Court has reviewed the

record, and now enters the following Order.

### Background

Plaintiff initiated this *pro se* civil action on August 18, 2003, naming as

Defendants the Georgia Department of Corrections ("GDC"), Joe Philip

Ferrero, Acting Commissioner of the GDC, and numerous prison officials.  As

presently amended, his Complaint, brought pursuant to 42 U.S.C. § 1983 and

the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42

U.S.C. § 2000cc,[1] challenges eight aspects of his confinement.

First, Plaintiff attacks a prison policy requiring him to stand "at attention"

at the request of prison officials.  Second, he challenges limitations on the

number and type of books (*e.g.*, foreign language books, books pertaining to

electronics) an inmate may have in his possession.  Third, Plaintiff takes issue

with prison policies limiting the amount of legal, religious, or educational

_____

[1] Plaintiff, at one point in this litigation, also purported to bring suit under the Alien Tort Claims Act, but voluntarily dismissed those claims upon realizing that he was a United States citizen.

AO 72A
(Rev.8/82)

materials a prisoner may have in his possession to that which "does not create a fire, sanitation, security or housekeeping problem."  Fourth, Plaintiff asserts that Defendants have failed to comply with their obligations to provide notice to a prisoner, notice to a sender, and an opportunity to appeal when mail and publications are rejected by prison officials.  Fifth, he contends that a prison policy restricting inmates' receipt of "gift publications"–that is, publications not paid for out of their inmate accounts–violates his constitutional and statutory rights.  Sixth, he attacks prison policies requiring (i) that a prisoner, before taking a correspondence course and obtaining publications in connection with that course, obtain the approval of a "Classification Committee," and (ii) that a prisoner provide the title and description of publications in a "package request" before the publications arrive at the prison, stating that these policies constitute unlawful "pre-censorship."  Seventh, he argues that prison officials denied him his digital Qur'an at certain times during his incarceration.  Finally, he claims that the prison officials have unlawfully denied him the right to wear a "Kufi," which he contends is compelled by his religion.

　　　In an Order dated August 15, 2005 [122], this Court rejected Plaintiff's "digital Qur'an" claim, holding that Defendants' intervening decision to permit

him to possess the relevant device mooted his claims for injunctive relief, while

the Eleventh Amendment and qualified immunity barred his request for a

monetary award.  It additionally declined to grant Plaintiff a preliminary

injunction barring the enforcement of a rule requiring that all publications

received by prisoners be pre-paid, citing numerous decisions from other courts

rejecting similar claims.  In contrast, the Court granted Plaintiff preliminary

injunctive relief on his due process claims, and required that Defendants, when

rejecting any mail or publications sent to Plaintiff at Central State Prison,

provide him with the procedural safeguards set forth in Guajardo v. Estelle, 580

F.2d 748, 762 n.10 (5th Cir. 1978) ("An inmate receives sufficient review of the

administration's decision not to permit the magazine if he receives (1)

appropriate notice, (2) a reasonable opportunity to challenge the initial decision,

and (3) an ultimate decision by a disinterested party not privy to the initial

censorship decision.").

On October 25, 2005, Plaintiff was released from prison, but has

continued to aggressively pursue this litigation.

## Discussion

Since the Court last took up this matter in August of 2005, the parties

6

have filed over thirty motions that require resolution.  Before considering the

merits of the parties' submissions, however, the Court takes this opportunity to

speak to the escalating, and increasingly inappropriate, level of acrimony and

petulance evident in their filings.

Plainly, this matter implicates important statutory and constitutional

guarantees, and Plaintiff has every right to prosecute his grievances with

diligence and zeal.  He has elected to do so, and the Court values the research,

time, and considerable effort Plaintiff has brought to the task.

Having said that, this Court's limited resources should not be invoked to

resolve every unpleasantry associated with prison life, even where those

unpleasantries (as alleged in many of Plaintiff's many motions for preliminary

injunctive relief and for contempt) carry with them some indicia of "bad faith" or

personal animosity.  Cf. Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir.

2005) (for purposes of a § 1983 retaliation claim, "[a] plaintiff suffers adverse

action [only] if the defendant's allegedly retaliatory conduct would likely deter a

person of ordinary firmness from the exercise of First Amendment rights").

This Court has little doubt, moreover, that in light of his release from prison,

Plaintiff's intellect and abilities might be used in ways more beneficial to himself

7

and to society than aggressively litigating over every such incident.

In any event, while this Court can appreciate Plaintiff's frustration over some of the occurrences alleged in his papers, this is certainly not the appropriate venue to level personal attacks or criticisms at those officials who may have offended him while he was incarcerated.  Accusing Defendants of having a "God complex," of having a proclivity towards deception or "hypocrisy," and casting every conceivable inconsistency in their declarations as "perjurious" detracts from, rather than elevates, the persuasiveness of Plaintiff's substantive arguments.  It is the rare case where parties to a civil suit do not perceive some nefariousness in their opponent's litigation tactics, but accusations such as these tend to obfuscate the real issues before the Court and have no place in the principled resolution of disputes.

While Plaintiff bears some fault in this regard, he is by no means alone in allowing this litigation to devolve as it has.  Defendants' filings often rest far too heavily on vitriolic rhetoric and platitudes, sometimes to the exclusion of pertinent authority and a comprehensive response to Plaintiff's contentions.  This case, and others initiated by Plaintiff, will not be won or lost on animosity and sarcasm, but on legal authority and the evidence of record.  Plaintiff,

8

notwithstanding his *pro se* status, has managed to consistently harness helpful precedents and offer thoroughly prepared arguments in support of his positions. The Court expects at least as much of opposing counsel.  While it demands candor and diligence from all those who come before it, the Court has justifiably higher expectations of members of the bar.  Going forward, it expects those standards to be met in this case.

With that admonition, the Court first addresses some preliminary matters that can be resolved with minimal discussion.  It then turns to consider Plaintiff's Motion to Amend his Complaint.   Next, it addresses Defendants' Motion to Dismiss and Objection to Plaintiff's *In Forma Pauperis* Status. Finally, it turns to the myriad motions for preliminary injunction, motions for contempt, and motions respecting discovery that appear on the docket.

## I.   Preliminary Matters

First, Plaintiff's Motion to Correct\Withdraw Plaintiff's Third Motion to Compel Discovery [118], Motion to Extend Time to File Reply to: (1) Defendants' Response to Reply in Support of Second Motion for Preliminary Injunction, and (2) Defendants' Response to Motion for Default Judgment, Sanctions, or Contempt [121], Motion to Extend Time to File Reply in Support

of Plaintiff's Third Motion for Preliminary Injunction [127], and Motion to Strike [129] are **DENIED as moot**.  The underlying motions to which those filings relate have already been resolved by this Court, and further action *vis-a-vis* those motions would be futile.

Second, Plaintiff's Motion to Withdraw Plaintiff's Motion to File Fourth Amended and Supplemental Complaint Without Prejudice [189] is **GRANTED**. Plaintiff's Motion to File Fourth Amended and Supplemental Complaint [133] is **DENIED as withdrawn**.

Third, Plaintiff's Motion To Stay Schedule for Plaintiff's Motion for Summary Judgment [146], and Motion to Stay Consideration of (1) Plaintiff's Motion for Contempt and Sanctions, (2) Plaintiff's Second Motion for Contempt and Sanctions, (3) Plaintiff's Third Motion for Contempt and Sanctions, and (4) Plaintiff's Fifth Motion for Preliminary Injunction, Pending Reply by Plaintiff [155] are **GRANTED** *nunc pro tunc*.

Likewise, Defendants' Motion to Stay Consideration of Plaintiff's Motions Currently Pending before this Court until Defendants' Motion to Dismiss Is Ruled Upon [175] is **GRANTED**.  The Court resolves all

outstanding submissions at this juncture, and takes into account its rulings on

Defendants' Motion to Dismiss in deciding the other motions pending before it.

Fourth, Plaintiff's Motion to Extend Time to File Reply in Support of

Plaintiff's: (1) Renewed Original Motion for Default Judgment, (2) Second

Motion for Default Judgment, (3) Motion for Additional Discovery, and (4)

Motion to Strike (1) Defendants' Response to Plaintiff's Motion for Contempt

and Sanctions, and (2) Defendants' Response to Plaintiff's Fourth Motion for

Preliminary Injunction, as Untimely [177] is **GRANTED** *nunc pro tunc*.

Finally, the Court considers Plaintiff's Motion to Strike (1) Defendants'

Response to Plaintiff's Motion for Contempt and Sanctions, and (2)

Defendants' Response to Plaintiff's Fourth Motion for Preliminary Injunction,

as Untimely [167] and his Motion to Extend Time to Respond to Defendants':

(1) Motion to Dismiss, and (2) Motion to Stay Consideration of Plaintiff's

Motions [178].  In the first, Plaintiff asks that the Court strike from the record

two responses that Defendants filed over two weeks after the expiration of the

deadline imposed by this Court's Local Rules without seeking or obtaining an

extension of time.  The Court **DENIES** that Motion [167], and will consider the

underlying motions on their merits.  That said, it admonishes counsel, again, that

11

failure to respond in a timely manner to Plaintiff's filings may, in the future,

result in those filings being granted as unopposed.  See LR 7.1B, NDGa

("Failure to file a response shall indicate that there is no opposition to the

motion.").[2]

 In the second motion [178], Plaintiff asks for a ten day extension to file

certain responsive briefs in light of his recent release from prison.  Defendants

oppose this motion, arguing:

> Since Plaintiff's release from prison he has had plenty
> of opportunities to go to a law library (as his motion
> for extension of time reveals).  He just decided to
> use his time for other things.  Daker does not allege or
> state in his request for the extension of time that he
> was prevented from going to a library.  He states
> essentially that he has been busy doing other things
> that he deemed more important, and since he does not
> have the money for Lexis or Westlaw (like at Central
> State Prison) it would have been inconvenient for him
> to take the time to go to a law library.

---

[2] Plaintiff points out in his papers that, in a different case, the Court made a similar admonition to counsel of record.  See Daker v. Wetherington, No. 1 :01-CV-3257-RWS, at 6  (N.D. Ga. June 18, 2003)  ("The Court will hereafter consider untimeliness–by either party–as a basis for denying . . . a motion.").  That admonition, read in context, plainly was not intended to constitute a standing order in all cases between Plaintiff and the Georgia Attorney General's office, and does not automatically entitle Plaintiff to relief in all cases in which Defendants fail to tender a timely response.  Having said that, consistently delinquent filings in any matter may result in such a sanction, and defense counsel would serve their clients well by paying closer attention to court-imposed deadlines.

AO 72A
(Rev.8/82)

(Resp. in Opp'n to Pl.'s Mot. [179] at 3-4.)

Defendants' argument is not well taken.  First, it is plainly incongruous for defense counsel, on the one hand, to neglect to respond to Plaintiff's filings for weeks after those responses were due, and then object to Plaintiff's timely request for a short extension of time.  Second, no reasonable observer could deem Plaintiff's pursuit of this litigation as anything but diligent.  And finally, of the many requests this Court has entertained for extensions of time, it has found few more compelling than one seeking an additional ten days to allow a litigant to prepare a response to a dispositive motion while he adjusts to life outside prison for the first time in a decade.  Plaintiff's Motion to Extend Time to Respond to Defendants': (1) Motion to Dismiss, and (2) Motion to Stay Consideration of Plaintiff's Motions [178] is **GRANTED** *nunc pro tunc*.

**II.    Plaintiff's Motion to Amend, Motion to Add Defendants**

Plaintiff requests leave to amend, for the fourth time, his claims in this case.  He states that such an amendment is necessary to "rebut some of the expected defenses Defendants may raise[,]" to identify additional instances in which Defendants have engaged in the acts and enforced the policies attacked in Plaintiff's existing pleadings, and to add new claims with a nexus to prison mail

13

and publication policies.  (<u>See</u> Mot. to File Fourth Am. and Supp. Compl.

[190].)  Plaintiff, through two different motions, has also moved to add four

party-defendants to this litigation.  (<u>See</u> Mot. to Add Defs. [154]; Mot. to File

Fourth Am. and Supp. Compl. [190].)  The Court addresses these matters

below.

    **A.**    **Amendment and Supplementation of Claims**

    Rule 15 governs the amendment of a party's pleading.  It provides, in

pertinent part,

> (a) Amendments.  A party may amend the party's
> pleading once as a matter of course at any time before
> a responsive pleading is served . . . .  Otherwise a
> party may amend the party's pleading only by leave of
> court or by written consent of the adverse party; and
> leave shall be freely given when justice so requires.
>
> . . .
>
> (d) Supplemental Pleadings.  Upon motion of a party
> the court may, upon reasonable notice and upon such
> terms as are just, permit the party to serve a
> supplemental pleading setting forth transactions or
> occurrences or events which have happened since the
> date of the pleading sought to be supplemented . . . .

FED. R. CIV. P. 15(a) & (d).[3]  Here, because Plaintiff has previously amended

his Complaint, alteration of his pleading under either Rule 15(a) or (d) rests

within the discretion of the Court.  See, e.g., Sheehan v. City of Gloucester, 321

F.3d 21, 26 (1st Cir. 2003) ("The decision whether to allow motion for leave [to

amend or to supplement] falls within the district court's discretion.").

        After considering the issue, the Court concludes that it would be

appropriate to permit Plaintiff to supplement his pleading to include additional

incidents in which Defendants (allegedly) violated his constitutional and statutory

rights by enforcing the policies or engaging in the acts challenged in the current

iteration of his pleading.  Thus, for example, he will be permitted to supplement

his Complaint to incorporate instances in which he was not afforded due

process in connection with the rejection of incoming mail or publications

---

        [3] Plaintiff also attempts to invoke Rule 15(b), which provides, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."  FED. R. CIV. P. 15(b). The problem with this argument, from the Court's perspective, is that no issue has yet been "tried" in the case.  Unless and until Plaintiff raises the matters asserted in his Fourth Amendment Complaint, without objection from defense counsel, at an evidentiary hearing or at trial, the Court does not believe Rule 15(b) provides an available vehicle for inserting these claims into this case.  See Found. on Econ. Trends v. Watkins, 794 F. Supp. 395, 401 n.5 (D.D.C. 1992) ("Plaintiffs also argue that their Motion to Amend should be granted as an amendment to conform to the evidence under Rule 15(b).  As defendants correctly note, that Rule by its own terms applies only to issues that have been 'tried.'  FED. R. CIV. P. 15(b).  There has been no trial in this case, and therefore Rule 15(b) does not apply.").

15

directed to him in prison that occurred after he requested leave to file the Third

Amended Complaint.

　　　　While presenting a much closer question, the Court will likewise permit

Plaintiff to amend his pleading to include the reflected challenges to prison

policies and practices not attacked in the present iteration of the Complaint

(including, *e.g.*, the "DORM Requirement," Proposed Fourth Am. Compl.

[190] at "F"; destruction or confiscation of materials within his possession

without appropriate process, id. at "N"; SOP IIA14-0001, id. at "O"; SOP

IIB04-0001, id. at "P" and "Q"; and § 1983 retaliation related to his pursuit of

this litigation, id. at "R").  While the Court appreciates that this litigation has

been pending for quite some time, those issues share a sufficient nexus with the

causes of action already alleged in the pleadings that judicial economy would

best be served by permitting Plaintiff to pursue his various challenges in a single

action.

　　　　Conversely, the Court will not permit Plaintiff to amend or supplement his

pleading to assert any causes of action in his capacity as a non-prisoner–that is,

as the non-incarcerated sender of correspondence or publications directed *to*

individuals within the Georgia prison system. The Court appreciates Plaintiff's

position that the rights of prisoners and non-prisoners to communicate with one another are deeply intertwined.  It also recognizes that the policies at issue in this litigation affect both the sender and the incarcerated, intended recipients of mail and publications.  But the Court is of the view that Plaintiff's release from prison altered his position in such a dramatic and fundamental way that claims brought in his capacity as a non-incarcerated citizen should not be conflated with those he initiated as a prisoner.  The Court finds that expanding this suit to include such analytically and factually distinct claims would result in undue delay, and would lead to unnecessary confusion and complication of the issues in this case.  To be sure, if Plaintiff desires to pursue such matters in a separate suit, he is free to do so, but those claims will not be permitted to proceed here.

### B.    Motion to Add Parties

Rule 21 provides that, "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."  FED. R. CIV. P. 21.  At this juncture, Plaintiff seeks to add four defendants to this case–namely, Donald Jones, Donald Harris, Robert Basley, and Juanita Thorpe.  With respect to Donald Jones and Donald Harris, whom Plaintiff seeks to add in his Motion to Add Defendants [154], his

request is **GRANTED as unopposed**.  Likewise, the Court perceives no reason why the addition of Juanita Thorpe and Robert Basley to this litigation would be unjust.  Consequently, insofar as Plaintiff seeks their addition to this suit in his Motion to File Fourth Amended and Supplemental Complaint [190], that motion will be granted.

In sum, Plaintiff's Motion to File Fourth Amended and Supplemental Complaint [190] is **GRANTED in part and DENIED in part**.  His Motion to Add Defendants [154] is **GRANTED as unopposed**.  Plaintiff is **DIRECTED**, within ten (10) days of this Court's Order, to file and serve a revised Fourth Amended Complaint that is consistent with this opinion.  Existing Defendants shall have ten (10) days thereafter to respond to the revised pleading.  FED. R. CIV. P. 15(a).  The recently added parties shall have the time afforded them by Rule 12 to tender their responses, but are encouraged to respond as expeditiously as possible to the revised Fourth Amended Complaint.

### III.    Motion to Dismiss

Defendants have moved to dismiss this suit in light of Plaintiff's release

AO 72A
(Rev.8/82)

from prison.  They urge that his claims for injunctive relief are now moot, that the RLUIPA does not provide for monetary relief, and that § 1997e(e) of the Prison Litigation Reform Act precludes his recovery of either compensatory or punitive damages.[4]  The Court addresses each contention in turn.

## A.    Injunctive and Declaratory Relief

"The general rule[,]" long recognized in this Circuit, "is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief."  McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984).  Plaintiff acknowledges that this principle precludes him from seeking injunctive and declaratory relief *vis-a-vis* some of his claims.  Nevertheless, he maintains that he continues to have standing to seek an injunction barring the enforcement of policies affecting prisoner's receipt of mail and publications, because such policies impact his rights as a non-incarcerated

---

[4]  Defendants also contend that Plaintiff's claims predicated on the Georgia Constitution are barred by the Eleventh Amendment, while claims against them in their individual capacities are barred by the doctrine of qualified immunity.  With respect to the former contention, Plaintiff, in his responsive papers, moves to voluntarily dismiss without prejudice his claims brought pursuant to the State Constitution.  (See Pl.s' Resp. to Defs.' Mot. to Dismiss [184] at 7.)  That motion is **GRANTED**, and thus, the Court need not consider the matter further.  As it relates to Defendants' qualified immunity argument, they only raised the issue in their reply brief, and the Court declines to address a contention to which Plaintiff has had no opportunity to respond.

individual to communicate with those on the "inside."

Without passing judgment on whether the proposition permits Plaintiff, as a free citizen, to challenge the full spectrum of policies he attacks in his pleadings, the Court acknowledges that non-incarcerated individuals have the right to challenge prison policies that implicate the protections afforded them by the First Amendment and the Due Process Clause.  The more germane issue, however, is whether Plaintiff should be able to assert such rights *here*.  The Court, as related above, has answered that question in the negative, declining to permit Plaintiff to amend his pleadings to assert any claim in his status a free citizen.  In light of that determination, Plaintiff's standing in this suit remains that of a former inmate.  Under McKinnon, his claims for injunctive relief are consequently moot, and Defendants' Motion to Dismiss [174], insofar as it seeks dismissal of those claims, will be granted.

**B.      Availability of Monetary Damages**

Defendants next contend that Plaintiff is precluded from recovering monetary relief in this case, and that, in light of his inability to obtain an injunction, his suit must be dismissed in its entirety.  In particular, they argue that Plaintiff's claims under the RLUIPA fail because the statute does not provide

AO 72A
(Rev.8/82)

for recovery against state officials in their individual capacities.[5]   Because

Plaintiff has failed to allege a physical injury, moreover, Defendants assert that

the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e),[6] precludes the recovery

of compensatory or punitive damages on the remainder of his claims.

> 1.    The RLUIPA

The Court first considers Defendants' argument that the RLUIPA does

not provide for the recovery of damages against government officials in their

individual capacities.  While the matter is not free from doubt, after carefully

considering the issue, the Court finds Defendants' reading of the statute

unpersuasive.

The Court begins by acknowledging that a growing number of federal

courts have expressed equivocation, if not doubt, as to whether the RLUIPA

permits suits for damages against government officials in their individual

capacities.  See Gooden v. Crain, – F. Supp. 2d –, 2005 WL 3436769, at *9

---

[5] The Court has already concluded that the Eleventh Amendment bars claims for damages against Defendants in their official capacities under the RLUIPA.   (See Aug. 15, 2005 Order [122] at 12-14.)

[6] "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

21

(E.D. Tex. Dec. 13, 2005) (appearing to hold claims for damages, especially

those against officials in individual capacities, unavailable under the RLUIPA);

Smith v. Haley, 401 F. Supp. 2d 1240, 1246 (M.D. Ala. 2005) ("Because there

is simply nothing in the statute that clearly suggests that government employees

can be liable for damages in their individual capacities, the court doubts that

RLUIP[A] provides for such."); Boles v. Neet, 402 F. Supp. 2d 1237, 1240 (D.

Colo. 2005) ("The Court understands [the RLUIPA] to permit cases against a

governmental entity, but not against an individual officer, except perhaps in his

or her official capacity."); Chase v. City of Portsmouth, No. Civ. A.

2:05CF446, 2005 WL 3079065, at *5 (E.D. Va. Nov. 16, 2005) ("Appropriate

relief may include injunctive and declaratory relief as well as nominal

damages."); Farrow v. Stanley, No. Civ. 02-567-PB, 2005 WL 2671541, at *11

n.13 (D.N.H. Oct. 20, 2005) ("There is substantial uncertainty . . . as to whether

[42 U.S.C. § 2000cc-2] even provides a right to money damages."); Guru

Nanak Sikh Soc'y of Yuba City v. County of Sutter, 326 F. Supp. 2d 1140,

1162 (E.D. Cal. 2003) ("the issue of whether RLUIPA allows the recovery of

damages is an open question"); Agrawal v. Briley, No. 02C6807, 2003 WL

164225, at *2 n.2 (N.D. Ill. Jan. 22, 2003) ("it is unclear whether [42 U.S.C. §

2000cc-2(a)] authorizes a claim for damages as well as injunctive relief").  <u>But see</u> <u>Williams v. Bitner</u>, 359 F. Supp. 2d 370 (M.D. Pa. 2005) (recognizing corrections employees and officials' exposure to liability in individual capacities on inmate's § 1983 claim asserting violation of the RLUIPA).

These decisions, however, have tended to rely on two lines of argument, neither of which, respectfully, the Court is persuaded to adopt at this juncture.[7] First, many of these decisions concentrate on the RLUIPA's emphasis on "government[s]," and, in particular, the language of § 2(a), which provides:

> (a) Cause of action
>
> A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief *against a government*. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution.

42 U.S.C.A. § 2000cc-2(a) (emphasis supplied); <u>see also</u> 42 U.S.C. § 2000cc-

---

[7] The Court observes that many of the decisions cited *supra* were handed down only within the last three months.  The body of case law governing the RLUIPA is rapidly expanding.  In light of the nascent and emerging nature of RLUIPA jurisprudence, the Court does not rule out the possibility that the reasoning expressed in some intervening decision might persuade it to depart from its current position.  The arguments raised by Defendants to date, however, do not convince the Court that a more constrained  reading of the RLUIPA is the correct one.

1(a) ("*No government* shall impose a substantial burden on the religious exercise

of a person residing in or confined to an institution, as defined in section 1997

of this title . . ." absent showing that imposition of the burden is the least

restrictive means of furthering a compelling governmental interest) (emphasis

supplied).  These decisions reason that the allowance of relief against

"governments" cannot be understood to embrace claims against state officials in

their individual capacities.  See, e.g., Smith, 401 F. Supp. 2d at 1246.

The Court certainly recognizes the appeal of such a construction.

Subjecting government officials to personal liability for violation of the

RLUIPA's arduous mandates is an unpalatable proposition.  But the Court finds

such a reading extremely problematic in light of the Act's definition of

"government":

> The term "government" . . . means--
>
> (i) a State, county, municipality, or other governmental entity created under the authority of a State;
>
> (ii) any branch, department, agency, instrumentality, or *official* of an entity listed in clause (i); *and*
>
> (iii) *any other person acting under color of State law* . . . .

24

42 U.S.C. § 2000cc-5(4) (emphasis supplied).  Were the Act's definition of

"government" limited to subsections (i) and (ii), its remedial reach would no

doubt be susceptible to a construction that embraces only those claims asserted

against "official[s]" in their "official" capacities.  In adding subsection (iii),

however, with language that tracks so closely that found in 42 U.S.C. § 1983

("Every person who, under color of any statute, ordinance, regulation, custom,

or usage, of any State"), Congress seemed to envision a concept of

"government" that would include all those persons amenable to suit under §

1983–including, necessarily, state officials in their individual capacities.[8]

　　　　The other line of argument that has led some courts to call into question

whether monetary relief  is available under the Act is that, in providing for

---

[8] In its August 15, 2005 Order [122], the Court, addressing Plaintiff's claim that
Defendants' had unlawfully denied him his digital Qur'an, concluded that Plaintiff's First
Amendment and RLUIPA claims could not succeed against Defendants in their individual
capacities.  It rested its decision on principles of qualified immunity, holding that "[i]n light
of [Defendants' proffered] justifications and the inescapably amorphous proscriptions
reflected in the RLUIPA and the free Exercise Clause, the Court cannot say that
Defendants' actions ran afoul of any 'clearly established' right."  (See Aug. 15, 2005 Order
[122] at 19.)  Implicit in its reasoning was the understanding that the RLUIPA authorized
the recovery of such damages against government actors in their individual capacities.  This
Court adhered to a similar reading of the statute in Daker v. Wetherington, Civil Action No.
1:01-CV-3257-RWS, and in doing so, rejected the defendants' argument that state officials
were not "governments," and thus, properly named defendants, within the meaning of the
RLUIPA.  (See Aug. 1, 2005 Order [262] at 18-19, Civil Action No. 1:10-CV-3257-RWS.)

AO 72A
(Rev.8/82)

"appropriate relief," Congress did not specifically mention the availability of damages.  According to these courts, the RLUIPA could, and perhaps should be read as permitting only injunctive or declaratory relief.

The problem with this argument, from this Court's perspective, is that "while § 2000[cc-2(a)] does not explicitly permit individual capacity suits for money damages, it does explicitly preclude them either."  See Jama v. United States Immigration and Naturalization Serv., 343 F. Supp. 2d 338, 374 (D.N.J. 2004) (interpreting RFRA).  Had Congress intended the relief available under the RLUIPA to be limited to that of an equitable or declaratory character, it could have easily have said so.  But instead Congress chose to provide for "appropriate relief," and the Court discerns no basis in the statute to declare all monetary awards categorically "inappropriate" while reaching precisely the opposite conclusion *vis-a-vis* injunctive remedies.

Rather, this Court reads the Act's provision for "appropriate relief" as an incorporation by Congress of the vast body of law respecting the manifold limitations on government and government actor's exposure to suit–including, *e.g.*, the Eleventh Amendment, qualified immunity, and the Prison Litigation Reform Act.  This reading of the Act, moreover, is entirely consonant with the

26

Court's previous rulings in RLUIPA actions initiated by Plaintiff, including its previous decisions in this case.

In sum, this Court reads the RLUIPA to permit suit against state officials in their individual capacities. That allowance, however, remains encumbered by a weighty qualified immunity restriction, as well as the many other limitations that define the contours of "appropriate relief" in litigation initiated by prisoners against government officials.

2.   Section 1997e(e).

Defendants additionally argue that Plaintiff is incapable of recovering compensatory or punitive damages in this case pursuant to the bar imposed by the Prison Litigation Reform Act, which provides:

> No Federal civil action may be brought by a prisoner
> confined in a jail, prison, or other correctional facility,
> for mental or emotional injury suffered while in
> custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

To be sure, § 1997e(e) limits the availability of damages in this case, notwithstanding Plaintiff's release from prison. Harris v. Garner, 216 F.3d 970, 975 (11th Cir. 2000) (en banc). Moreover, the restrictions recited in the Act

27

apply with equal force to Plaintiff's claims asserting deprivations of constitutional rights.  Id. at 984.  Contrary to Defendants' argument, however, those principles do not lead to the conclusion that Plaintiff's requests for monetary relief are altogether unsustainable.

First, Plaintiff may be able to recover nominal damages to the extent he proves a violation of a fundamental constitutional right.  See Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003).  What is more, the Act, by its terms, limits the recovery of damages only for claims asserting "mental or emotional injury . . . ." See 42 U.S.C. § 1997e(e).  In the instant case, Plaintiff purports to seek damages for pecuniary losses (*e.g.*, arising out of the destruction or rejection of publications).  Defendants have failed to explain why § 1997e(e) should be read to in any way deprive Plaintiff of the ability to recover such sums.  See Robinson v. Page, 170 F.3d 747, 748 (7th Cir. 1999) ("Section 1997e(e), as its wording makes clear, is applicable only to claims for mental or emotional injury. It has no application to a claim involving another type of injury."); Thompson v. Carter, 284 F.3d 411, 418 (2d Cir. 2002) ("We also do not perceive any basis in Section 1997e(e) for barring an award of compensatory damages for the loss of Thompson's property provided he can establish actual injury.").  Likewise,

28

Defendants have not persuaded the Court that the Act operates to bar the imposition of punitive damages, at least *vis-a-vis* those claims not predicated on "mental or emotional injury . . . ." <u>See</u> 42 U.S.C. § 1997e(e).

In sum, Defendants' Motion to Dismiss [174] is **GRANTED in part and DENIED in part**.  It is granted insofar as it seeks dismissal of Plaintiff's claims for injunctive relief.  It is denied in all other respects.

## IV.    Objection to Plaintiff's *In Forma Pauperis* Status

The Court next turns to Defendants' Objection to Plaintiff's *in Forma Pauperis* Status and Motion for Payment of Filing Fees [191].  In that Objection, Defendants argue that Plaintiff's release from prison and opportunity to obtain gainful employment undermine his ability to continue to proceed as a pauper.  The Court disagrees.

First, while an individual's release from prison does not excuse his prior noncompliance with 28 U.S.C. § 1915(b), <u>see</u> <u>In re Smith</u>, 114 F.3d 1247, 1251 (D.C. Cir. 1997) ("We find nothing to indicate that Congress intended to create a loophole through which prisoners could evade their PLRA fee obligations *while in prison* and be permanently relieved of these duties upon their release.")

29

(emphasis supplied); Robbins v. Switzer, 104 F.3d 895, 899 (7th Cir. 1997)

("Under the Act, release does not eliminate an obligation that could and should

have been met from the trust account while imprisonment continued."), release

does not immediately trigger an absolute obligation on the part of the litigant to

pay any outstanding balance of the filing fee.  See DeBlasio v. Gilmore, 315

F.3d 396, 398-99 (4th Cir. 2003) (collecting cases); McGore v. Wrigglesworth,

114 F.3d 601, 612-13 (6th Cir. 1997); McGann v. Comm'r Soc. Sec. Admin.,

96 F.3d 28, 30 (2d Cir. 1996).

Second, the Court does not find Defendants' generalized assertions

respecting Plaintiff's ability to obtain gainful employment sufficient to undermine

his indigent status.  To be sure, authority exists supporting the consideration of

a litigant's earning capacity and ability in the *in forma pauperis* inquiry.  See

Martinez v. Detroit Edison Co., 113 F.3d 1235, 1997 WL 225509, at *1 (6th

Cir. 1997) (unpublished table decision); In re Fromal, 151 B.R. 733, 734-35

(E.D. Va. 1993); Roberts v. I-T-E Circuit Breaker Co., 316 F. Supp. 133, 134

(D. Minn. 1970).  But an objection that rests solely on a litigant's release from

prison, in the view of this Court, is insufficient to support the conclusion that

the individual is necessarily capable of becoming financially able to pursue

30

litigation in the federal courts without assistance.  Because Defendants have

offered no more than this to support their objection, the Court does not find it

appropriate to revoke Plaintiff's *in forma pauperis* at this juncture.

With that said, the Court recognizes that the privilege afforded a former

prisoner to pursue litigation as a pauper is no greater than that provided to any

other citizen.  See DeBlasio, 315 F.3d at 398-99; McGore, 114 F.3d at 612-13;

McGann, 96 F.3d at 30; cf. Collier v. Tatum, 722 F.2d 653, 655 (11th Cir.

1983) (suggesting that district court should review litigant's financial resources

throughout lawsuit to ascertain appropriateness of *in forma pauperis* status).

While the arguments advanced by Defendants here do not persuade the Court

that revocation of Plaintiff's *in forma pauperis* status is presently appropriate,

affidavits provided in conjunction with Plaintiff's more recent filings in Daker v.

Barrett, Civil Action No. 1:06-CV-0055 (filed Jan. 6, 2006), and Daker v.

Donald, Civil Action No. 1:06-CV-0054 (filed Jan. 6, 2006), may require that the

Court undertake a more searching inquiry into Plaintiff's *in forma pauperis*

status.  In the event the Court engages in such a review and finds Plaintiff

financially capable of pursuing litigation without public subsidy, it may require

him to remit all or part of the required filing fees in all his civil suits, including

this one, or risk dismissal.  At present, however, Defendants' Objection to

Plaintiff's *in Forma Pauperis* Status and Motion for Payment of Filing Fees

[191] is **OVERRULED**.

## V.      Motions for Preliminary Injunctive Relief

Currently pending on the Court's docket are Plaintiff's Fourth, Fifth, and

Sixth Motions for Preliminary Injunction.  For all the reasons set forth *supra*,

Part III.A, those motions are now moot.  See <u>McKinnon</u>, 745 F.2d at 1363.

Accordingly, Plaintiff's Fourth Motion for Preliminary Injunction [138], Fifth

Motion for Preliminary Injunction [144], and Sixth Motion for Preliminary

Injunction [145] are **DENIED as moot**.

## VI.     Motions for Contempt and Sanctions

Since this case last came before the Court in August of 2005, Plaintiff has

filed five motions for contempt and sanctions.  "[T]he petitioner in a civil

contempt proceeding must establish by clear and convincing evidence that the

alleged contemnor violated the court's earlier order."  <u>United States v. Roberts</u>,

858 F.2d 698, 701 (11th Cir. 1988); <u>Sizzler Family Steak Houses, Inc. v. W.</u>

<u>Sizzlin Steak House, Inc.</u>, 793 F.2d 1529, 1534 n.4 (11th Cir. 1986) ("A finding

of contempt must be based on clear and convincing evidence that the

contemnor violated a court order . . . .") .[9]  Even where contempt is shown,

moreover, "[t]he decision to impose sanctions for a party's contemptuous

conduct is discretionary . . . ."  In re Employment Discrimination Litig. Against

the State of Ala., 213 F.R.D. 592, 596 (M.D. Ala. 2003); Braintree Labs., Inc. v.

Nephro-Tech, Inc., 99 F. Supp. 2d 1300, 1303 (D. Kan. 2000) (holding

likewise).

　　　　Here, the Court declines to hold Defendants in contempt.  Initially, as it

relates to Plaintiff's (First) Motion for Contempt and Sanctions [134], the

conduct he cites as contemptuous is, by his own characterization, indicative of a

"bad faith" *implementation* and response to the Court's Order.  It does not

involve an actual "violation" of the Court's earlier mandate that "Defendants . . .

[not] deny[ ] Plaintiff the procedural due process safeguards mandated in

[Guajardo v. Estelle, 580 F.2d 748, 762 n.10 (5th Cir. 1978)] when rejecting any

mail or publications directed to him at Central State Prison . . . ."  (See Aug. 15,

2005 Order [122] at 23.)  While the conduct he describes might well prove

---

　　　　[9] The Court is not inclined, based on the current record, to consider the imposition
of criminal contempt sanctions.  See FED. R. CRIM. P. 42.  Thus, the discussion that
follows deals only with civil contempt.

unlawful in its own right, it does not, in the view of this Court, constitute "contempt."

Second, many of Plaintiff's motions cite as the basis for contempt actions by parties not explicitly made subject to the Court's August 15, 2005 Order. While some of the actors involved in the events he describes have since been added to this lawsuit, there is nothing to suggest that they were even aware of this Court's Order at the time the relevant occurrences transpired.

Third, and perhaps most important, the conduct cited by Plaintiff also serves as the basis for his amended, substantive claims in this litigation. To the extent the events he describes ultimately prove unlawful, Plaintiff may obtain relief without the necessity of this Court conducting collateral contempt proceedings, and may do so under an evidentiary standard less arduous than one demanding "clear and convincing evidence."

For all those reasons, Plaintiff's Motion for Contempt and Sanctions [134], Second Motion for Contempt and Sanctions [142], Third Motion for Contempt and Sanctions [143], Fourth Motion for Contempt and Sanctions [170], and Fifth Motion for Contempt and Sanctions [171] are **DENIED**.

## VII.   Motion for Default Judgment

Plaintiff, in two separate filings, requests the entry of default judgment against Defendants as a sanction for submission of papers containing statements that Plaintiff contends are inaccurate, and for conduct he describes as contemptuous.

Needless to say, the sanction of striking a party's pleadings and entering default judgment is extreme.  After reviewing Plaintiff's filings, this Court is convinced that it is also unwarranted in this case.  The inaccuracies cited by Plaintiff, while somewhat troubling, do not demonstrate the egregious falsehoods this Court would insist upon before dispensing with a trial on the merits and imposing a judgment by default.  Moreover, to the extent Defendants engaged in "contempt" by denying Plaintiff requisite due process, Plaintiff will have the opportunity to prove such conduct (and, if appropriate, recover damages) in connection with the presentation of his case.  The Court is disinclined to impose the "ultimate sanction"of default in light of this opportunity.  Plaintiff's Renewed Original Motion for Default Judgment [162] and Second Motion for Default Judgment [163] are **DENIED**.

## VIII.  Discovery Motions: Motions to Compel, Motions for Subpoenas, Motion for Additional Discovery

Plaintiff has filed eight motions with the Court respecting discovery: one motion seeking additional discovery, four motions to compel, one motion to interview witnesses, and two motions for subpoenas.  The Court addresses each below.

### A.      Motion for Additional Discovery

The Court begins with Plaintiff's Motion for Additional Discovery [166], and **GRANTS** his motion.  Permitting additional discovery will provide Plaintiff with the opportunity to procure evidence in support of his recently amended claims, and to submit limited requests to newly added parties.  It will additionally permit Defendants to obtain discovery from Plaintiff relating to the specific instances in which Plaintiff alleges he was subjected to unconstitutional or unlawful treatment (instances which, in his current pleading, remain ill-defined), as well as information respecting the publications and mail he claims to have been denied and any financial losses he purports to have suffered associated with those denials.

That said, the Court remains cognizant that this case has been pending for well over two years.  In addition, Plaintiff has already been permitted substantial discovery in this case, notwithstanding the "default" rule that affords no

36

discovery to prisoners pursuing claims for purported violations of their civil rights.  See LR, NDGa, at Appendix F (setting forth "Discovery Tracks" for civil actions, and assigning civil rights actions by prisoners to a "0" Months Discovery track).

Consequently, while this Court will permit additional discovery in this case, it will be kept relatively constrained.  The parties shall have until May 8, 2006 to complete discovery.  Any motions to compel respecting allegedly inadequate production shall be filed and served by no later than May 15, 2006. Responses to any motions filed shall be due on or before May 24, 2006.  The Court will take up the matter promptly after that date, and the parties, to the extent they feel reply briefs are appropriate, should file them with haste.  Absent further direction to the contrary, the parties shall then have twenty days following the latter of May 15, 2006 or, if necessary, the entry of this Court's Order on any motions to compel to file their motions for summary judgment.

Extensions of time, especially affecting discovery and the briefing schedule pertaining to motions to compel, will be granted only upon a showing of exceptional circumstances.  In the event the parties seek any such extensions, they should take steps to ensure that the Court is made aware of such a request

AO 72A
(Rev.8/82)

promptly after it is filed, and, absent an order from the Court granting such a motion, should not presume that the extension will be allowed.

### B.    Motions to Compel

As amended in 2000, Federal Rule of Civil Procedure 26 limits discovery to matters that are "relevant to the claim or defense of any party."  FED. R. CIV. P. 26(b)(1).  In addition, the Rule requires that a federal court limit otherwise permissible discovery in circumstances where it concludes, in its discretion, that "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive[,]" or that "the burden or expense of the proposed discovery outweighs its likely benefit . . . ."  FED. R. CIV. P. 26(b)(2)(i) & (iii).

With these principles as a foundation, the Court turns to the specific requests raised in Plaintiff's filings.  Given the multitude of relevant requests, the Court will avoid a lengthy discussion of each in addressing Plaintiff's motions. It resolves the outstanding motions as follows:

First, Plaintiff's Motion to Compel Compliance with Fifth Set of Requests for Production [117] is **GRANTED**.  With respect to Requests for Production Nos. 12, 13, and 14 to Hilton Hall and Request No. 24 to the

Georgia Department of Corrections, Defendants have already produced or agreed to produce all the information and materials sought therein to the extent those materials are in their possession, custody, or control.  Defendants, to the extent they have not already done so, are instructed to produce or make available for inspection the documents requested by Plaintiff.[10]

The remaining requests for production seek to obtain catalogs of all books and cassettes available at several prison libraries.  Plaintiff asserts that such documents are necessary to show that certain publications he requested were rejected on a pretextual basis–that is, to show that he was denied certain publications based on an ostensible "security threat," while similar or identical publications (*e.g.*, relating to foreign languages, computers, or electronics) were available to inmates at the same or similar prisons.  Defendants have agreed to provide much of the requested information to Plaintiff, and Plaintiff has withdrawn some of his requests upon learning that some of the catalogs and inventories requested do not exist.

At this point, the only remaining dispute between the parties appears to be

---

[10]As used throughout this subsection, the term "Defendants" refers to only those parties to whom Plaintiff directed the relevant request(s).

whether Defendants are obligated to produce the materials requested in

Plaintiff's Request for Production No. 23 to the Georgia Department of

Corrections.  There, Plaintiff requests that the GDC produce catalogs of

publications maintained by seven state institutions.  Defendants responded by

saying that the GDC itself "does not maintain a document which keeps an

inventory or list of books available in any of the Georgia Prisons."  (See Resp.

to Pl.'s Mot. to Compel [132] at 5-6.)  As Plaintiff correctly points out in his

reply, however, the question is not simply whether the GDC has present

possession of the requested catalogs, but also whether they are in the GDC's

"custody or control."  FED. R. CIV. P. 34(a).  Because the requested materials

appear to have some relevance to Plaintiff's claims, and because, in view of

Defendants' previous production of several such catalogs, the requested

production does not appear to place an undue burden on Defendants, the Court

will grant Plaintiff's motion as it relates to this request.  Defendants are ordered

to produce the requested catalogs within their possession, custody, or control

to the extent those catalogs exist.

The Court next considers Plaintiff's Sixth Motion to Compel Discovery

[164] and Seventh Motion to Compel Discovery [165].  In these motions,

Plaintiff purports to seek materials and information already compelled by this Court's August 15, 2005 Order.  Defendants have neglected to file any response to these motions.  In light of this lack of opposition, Plaintiff's motions are **GRANTED as unopposed**.  <u>See</u> LR 7.1B, NDGa.  Defendants are ordered to produce the requested materials to the extent those materials are within their possession, custody, or control.

That leaves Plaintiff's Eighth Motion to Compel Discovery [180].  In that motion, Plaintiff seeks four documents or sets of documents.  First, he asks that Defendants produce Formal Grievance No. 0541-02-0327.  Defendants claim at one point in their papers that the requested documents no longer exist, but misidentify the subject grievance.  Although that misidentification may be nothing more than a typographical error, to the extent the relevant grievance does still exist, Defendants are ordered to produce it.

Second, Plaintiff requests that Defendants produce Informal Grievance No. 0531-04-0135.  Defendants claim that the grievance has already been produced to Plaintiff, but Plaintiff complains that three of its four pages are missing.  Defendants are ordered to produce the document to Plaintiff in its entirety.

41

Third, Plaintiff seeks documents contained in his "property room file" at eight institutions.  He claims that Defendants produced only the "property documents" from his "institutional inmate file."  This distinction is critical, he says, because relevant documents (including those relating to publications he has been denied when housed at the various institutions) are sometimes omitted from his institutional inmate file but appear in the property room file. Defendants claim that all responsive documents have been produced, with the exception of those that do not relate to Plaintiff.

The Court agrees with Defendants insofar as they assert that files that do not "relate" to Plaintiff need not be produced.  Nevertheless, to the extent that the requested documents relate to Plaintiff and have not previously been produced, Defendants are ordered to make the requested production.

Finally, as amended by his reply brief, Plaintiff's motion seeks the production of his "classification documents."  Defendants claim that those files have already been produced, but Plaintiff disputes this, saying that unbeknownst to defense counsel, Defendant Benton refused to turn over the requested documents.  Again, to the extent that the requested documents have not previously been produced, Defendants are ordered to make the requested

42

production.

In summary, Plaintiff's Motion to Compel Compliance with Fifth Set of
Requests for Production [117], Sixth Motion to Compel Discovery [164],
Seventh Motion to Compel Discovery [165], and Eighth Motion to Compel
Discovery [180] are **GRANTED**.  Defendants, consistent with this Order, are
directed to make the requested production to the extent the relevant documents
exist and are within their possession, custody, or control.

### C.      Motion to Interview Witnesses

Plaintiff additionally requests the ability to interview witnesses in this
matter, including Defendants Ferrero, Hall, Benton, Jones, Harris, Basley, and
Thorpe.  He insists that such interviews are necessary "to determine the
penalogical [sic] justifications for Defendants' policies and customs . . . at issue
in this case, to show that those justifications are pretextual, irrational,
unreasonable or exaggerated," to show that the challenged policies and practices
fail to survive strict scrutiny, and "to lock [Defendants] in on their version of
events, so they will not be able to change it later at trial."  (See Mot. to Interview
Witnesses [196] at 2-3.)

To be sure, the Eleventh Circuit has indicated that a litigant may move a

district court to permit the interview of a potential witness, and this Court has

twice afforded Plaintiff that opportunity in other litigation.  See Barfield v.

Brierton, 883 F.2d 923, 933 n.11 (11th Cir. 1989); Daker v. Barrett, 1:00-CV-

1065-RWS (N.D. Ga. filed Apr. 25, 2000).  Nevertheless, in light of the palpable

animosity that exists between the parties in this case, and given the other

discovery mechanisms available to Plaintiff, the Court concludes that any

potential benefit that might inure from the requested interviews is so slight that it

does not justify subjecting Defendants to out-of-court examination by Plaintiff.

His Motion to Interview Witnesses [196] is **DENIED**.

### D.    Motion for Subpoenas

Plaintiff has filed two motions for subpoenas.  In the first [126], he

requests the Court issue a subpoena requiring Defendant Benton to produce

Plaintiff's institutional inmate file and property room file, as well as certain

records pertaining to grievances, that Plaintiff contends will show Defendant

Benton made "blatantly false and perjurious" statements in response to his

Second Motion for Preliminary Injunction–a motion upon which Plaintiff

prevailed.    Defendants do not oppose this Motion.  Nevertheless, this Court is

not inclined to allow this litigation to be used as a vehicle to permit Plaintiff to

44

explore every perceived misrepresentation contained in Defendants' filings (and he perceives many), especially where the relevant statements ultimately had no bearing on the Court's resolution of the motions at issue.  In any event, Plaintiff obtained much of the information sought through subsequent discovery requests.  His Motion for Subpoenas [126] is **DENIED**.

Second, Plaintiff seeks a subpoena requiring the librarian at Central State Prison to produce "all hunting magazines in the Central S.P. Library, including, but not limited to, all issues of the following magazines: Petersen's Bowhunting, Outdoor Life, Georgia Sportsman, Field & Stream, Bowhunter, Bowhunting World, and Deer & Deer Hunting."  (See Pl.'s Second Mot. for Subpoenas [153] at 1-2.)  Again, the Court declines to direct the Clerk to issue the subpoena.  Now that the discovery period has been extended, Plaintiff may seek the information relevant to his case without the aid of a court-issued subpoena, and in a request that imposes a far less onerous burden on Defendants (such as, *e.g.,* through requests that Defendants admit that the Central S.P. Library either has or once received copies of the identified periodicals).  Plaintiff's Second Motion for Subpoenas [153] is **DENIED**.

### Conclusion

45

For the convenience of the Clerk, the Court's resolution on the motions pending before it are summarized in the following table:

| Motion | Disposition |
| --- | --- |
| Plaintiff's Motion to Compel Compliance with Fifth Set of Requests for Production [117] | GRANTED |
| Plaintiff's Motion to Correct\Withdraw Plaintiff's Third Motion to Compel Discovery [118] | DENIED as moot |
| Plaintiff's Motion to Extend Time to File Reply to: (1) Defendants' Response to Reply in Support of Second Motion for Preliminary Injunction, and (2) Defendants' Response to Motion for Default Judgment, Sanctions, or Contempt [121] | DENIED as moot |
| Plaintiff's Motion for Subpoenas [126] | DENIED |
| Plaintiff's Motion to Extend Time to File Reply in Support of Plaintiff's Third Motion for Preliminary Injunction [127] | DENIED as moot |
| Plaintiff's Motion to Strike [129] | DENIED as moot |
| Plaintiff's Motion to File Fourth Amended and Supplemental Complaint [133] | DENIED as withdrawn |
| Plaintiff's Motion for Contempt and Sanctions [134] | DENIED |
| Plaintiff's Fourth Motion for Preliminary Injunction [138] | DENIED as moot |

AO 72A
(Rev.8/82)

| | |
|---|---|
| Plaintiff's Second Motion for Contempt and Sanctions [142] | DENIED |
| Plaintiff's Third Motion for Contempt and Sanctions [143] | DENIED |
| Plaintiff's Fifth Motion for Preliminary Injunction [144] | DENIED as moot |
| Plaintiff's Sixth Motion for Preliminary Injunction [145] | DENIED as moot |
| Plaintiff's Motion To Stay Schedule for Plaintiff's Motion for Summary Judgment [146] | GRANTED *nunc pro tunc* |
| Plaintiff's Second Motion for Subpoenas [153] | DENIED |
| Plaintiff's Motion to Add Defendants [154] | GRANTED as unopposed |
| Plaintiff's Motion to Stay Consideration of (1) Plaintiff's Motion for Contempt and Sanctions, (2) Plaintiff's Second Motion for Contempt and Sanctions, (3) Plaintiff's Third Motion for Contempt and Sanctions, and (4) Plaintiff's Fifth Motion for Preliminary Injunction, Pending Reply by Plaintiff [155] | GRANTED *nunc pro tunc* |
| Plaintiff's Renewed Original Motion for Default Judgment [162] | DENIED |
| Plaintiff's Second Motion for Default Judgment [163] | DENIED |
| Plaintiff's Sixth Motion to Compel Discovery [164] | GRANTED as unopposed |
| Plaintiff's Seventh Motion to Compel Discovery [165] | GRANTED as unopposed |

47

| | |
|---|---|
| Plaintiff's Motion for Additional Discovery [166] | GRANTED |
| Plaintiff's Motion to Strike (1) Defendants' Response to Plaintiff's Motion for Contempt and Sanctions, and (2) Defendants' Response to Plaintiff's Fourth Motion for Preliminary Injunction, as Untimely [167] | DENIED |
| Plaintiff's Fourth Motion for Contempt and Sanctions [170] | DENIED |
| Plaintiff's Fifth Motion for Contempt and Sanctions [171] | DENIED |
| Defendants' Motion to Dismiss [174] | GRANTED in part and DENIED in part |
| Defendants' Motion to Stay Consideration of Plaintiff's Motions Currently Pending before this Court until Defendants' Motion to Dismiss Is Ruled Upon [175] | GRANTED |
| Plaintiff's Motion to Extend Time to File Reply in Support of Plaintiff's: (1) Renewed Original Motion for Default Judgment, (2) Second Motion for Default Judgment, (3) Motion for Additional Discovery, and (4) Motion to Strike (1) Defendants' Response to Plaintiff's Motion for Contempt and Sanctions, and (2) Defendants' Response to Plaintiff's Fourth Motion for Preliminary Injunction, as Untimely [177] | GRANTED *nunc pro tunc* |
| Plaintiff's Motion to Extend Time to Respond to Defendants': (1) Motion to Dismiss, and (2) Motion to Stay Consideration of Plaintiff's Motions [178] | GRANTED *nunc pro tunc* |

48

| Plaintiff's Eighth Motion to Compel Discovery [180] | GRANTED |
|---|---|
| Plaintiff's Motion to Withdraw Plaintiff's Motion to File Fourth Amended and Supplemental Complaint Without Prejudice [189] | GRANTED |
| Plaintiff's Motion to File Fourth Amended and Supplemental Complaint [190] | GRANTED in part and DENIED in part |
| Defendants' Objection to Plaintiff's *in Forma Pauperis* Status and Motion for Payment of Filing Fees [191] | OVERRULED |
| Plaintiff's Motion to Interview Witnesses [196] | DENIED |

In addition, insofar as Plaintiff moves to voluntarily dismiss without prejudice his claims brought pursuant to the State Constitution (see Pl.s' Resp. to Defs.' Mot. to Dismiss [184] at 7), that motion is **GRANTED**.

**SO ORDERED** this   13th   day of February, 2006.


/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

49