# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| WASEEM DAKER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BRUCE CHATMAN, JOHN | : | CIVIL ACTION NO. |
| PERRY, DON JARRIEL, DAVID | : | 1:03-CV-02481-RWS |
| MCNEAL, SGT. ENOCH | : | |
| WATERS, HILTON HALL, L. | : | |
| STEPHEN BENTON, DONALD | : | |
| JONES, LT. DONALD HARRIS, | : | |
| and  JUANITA THORPE, | : | |
| | : | |
| Defendants. | : | |

## ORDER

This case comes before the Court for consideration of Defendants' Oral

Motion for Judgment as a Matter of Law.  Defendants made this Motion on

October 24, 2007, after the presentation of Plaintiff's evidence at trial.  The Court

granted the Motion in full as to Defendants Chatman, Perry, Jarriel, McNeal, Hall,

Harris, and Thorpe, and entered judgment in their favor.  In so doing, it made the

following rulings from the bench:

1

(1)    Plaintiff failed to exhaust his administrative remedies as to his claims under the First Amendment alleging the content-based denial of (a) *Revolution by the Book*, (b) *Georgia Criminal Trial Practice*, (c) *Georgia Criminal Trial Practice—Forms*, (d) *Georgia Handbook on Criminal Evidence*, (e) *Green's Georgia Law on Evidence*, (f) *Ragnar's Guide to the Underground Economy*, and (g) *Investing Offshore*; and

(2)    Defendants were entitled to qualified immunity on Plaintiff's claims under the Fourteenth Amendment alleging the denial of procedural due process.

The Court now enters this written order to explain the basis for these two rulings.[1]

The facts of this case are fully reported in the prior Orders of this Court.  See generally Daker v. Ferrero, 475 F. Supp. 2d 1325 (N.D. Ga. 2007) (order on first motion for summary judgment) [hereinafter Daker I]; Daker v. Ferrero, 506 F.

---

[1] The Court also granted the Motion in part and denied it in part as to the remaining Defendants in this action: Officers Waters, Benton, and Jones.  It granted the motion insofar as they sought qualified immunity on Plaintiff's procedural due process claims.  It denied the remainder, finding that Plaintiff exhausted administrative remedies as to his content-based claims concerning *Practical Electronics*, *Lip Reading Made Easy*, *HansWehr Arabic English Dictionary*, *Que Tal?*, *C++ from the Ground Up*, and *Visual Basic from the Ground Up*, because the grievance procedure was not "available" during his incarceration at Dodge State Prison.  See Daker v. Ferrero, 506 F. Supp. 2d 1295, 2007 WL 2460768, at *13 n.12 (N.D. Ga. Aug. 24, 2007).  The Court thus allowed those claims against Defendant Enoch Waters to proceed to the jury.  The Court also denied Defendants' Motion as to Plaintiff's retaliation claim against Defendants Benton and Jones, finding that a jury question existed concerning whether those two Defendants retaliated against Plaintiff for filing this lawsuit.  Id. at *2.

Supp. 2d 1295 (N.D. Ga. 2007) (order on second motion for summary judgment)

[hereinafter <u>Daker II</u>].

## I.     Failure to Exhaust

Defendants contend that they are entitled to judgment as a matter of law on

Plaintiff's First Amendment claims concerning the publications remaining at issue

in this lawsuit because Plaintiff failed to exhaust administrative remedies as to

those claims.[2]

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat.

1321 (1996), provides:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any other
> Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative
> remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement 'applies to all inmate

suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong.' "

<u>Johnson v. Meadows</u>, 418 F.3d 1152, 1155 (11th Cir. 2005) (quoting <u>Porter v.</u>

<u>Nussle</u>, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)).  "This

_____

[2] In view of the absence of clarity on this issue in the record, the Court previously held
that a dispute of fact existed concerning whether Plaintiff administratively exhausted his content-
based claims.  <u>See</u> <u>Daker II</u>, 2007 WL 2460768, at *12-14 n.11-13.

provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.' " Id. (quoting Booth v. Churner, 532 U.S. 731, 741 n.6, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001)).  Because the exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court," Jones v. Bock, 127 S. Ct. 910, 914 (2007), a prisoner must "provide as much relevant information as he reasonably can in the administrative grievance process." Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000).

At trial, Plaintiff conceded that he had not filed any grievances relating to the content-based denial of any of the specific publications which remain at issue in this litigation.  Nevertheless, Plaintiff introduced into evidence various non-specific grievances he filed challenging the process afforded to him at Hancock State Prison and Central State Prison upon the denial of publications.  Those grievances also contained general statements suggesting that he had been denied certain books based on content, but did not specify the titles of the books or the name of the denying official.  Plaintiff contends that those generalized grievances meet the exhaustion requirement as to his remaining content-based claims in this litigation.  The Court disagrees.

The denial of a publication to a prisoner on the basis of content without legitimate justification constitutes a discrete violation of the First Amendment.  See Thornburgh v. Abbott, 490 U.S. 401, 419, 109 S.Ct. 1874, 104 L. Ed. 2d 459 (1989).  Each publication improperly denied constitutes a separate actionable violation, and would entitle an individual to bring a separate suit remedying that violation.  See id. (remanding challenge under the First Amendment to content-based denial of publications to district court for determination as to whether "any of the 46 publications introduced at trial" were improperly denied).  Thus, under Section 1997e(a), a prisoner must aggrieve each denial of a publication which he contends constituted a violation of the First Amendment in order to preserve that claim for trial.  Because the prisoner "must provide as much relevant information as he reasonably can in the administrative grievance process," Brown, 212 F.3d at 1207, and because each denial constitutes a separate constitutional violation, it follows that a prisoner must exhaust available administrative remedies *as to each specific book improperly denied based on content*.[3]  Without such information, prison officials would have little opportunity to resolve whether the denial was

_____

[3] The Court would not find it necessary that the individual list the denied publications denied on separate grievance forms.  As in this case, if four books were denied at once by the same prison official, Plaintiff could have appropriately listed the titles of the four publications, and the denying official (if known), on his grievance form.

improper before being haled into court.  See Jones v. Bock, 127 S. Ct. 910, 914 (2007).

Here, although Plaintiff filed several generalized grievances complaining of defects in the process afforded to him upon the denial of publications (thus exhausting his procedural due process challenge discussed below), Plaintiff did not provide any specific information concerning the books remaining in this litigation that he claims were improperly denied on the basis of content, and thus did not exhaust his administrative remedies as to those claims.   Plaintiff admits that on May 7, 2003, he was provided actual notice of Deputy Warden John Perry's and Warden Bruce Chatman's decision to deny *Revolution by the Book* during Plaintiff's incarceration at Hancock State Prison.  (See Ex. B to 24th Aff. Daker [258-5].)  Plaintiff also admits that, on February 4, 2005, he was provided actual notice of Defendant Hilton Hall's decision to deny *Georgia Criminal Trial Practice*, *Georgia Criminal Trial Practice—Forms*, *Georgia Handbook on Criminal Evidence*, and *Green's Georgia Law on Evidence* during Plaintiff's incarceration at Central State Prison.  Finally, Plaintiff admits that, on April 19, 2005, he was provided actual notice of Defendant Stephen Benton's decision to deny Plaintiff *Ragnar's Guide to the Underground Economy* and *Investing*

*Offshore* at Central State Prison.[4]  Yet, during cross examination of Plaintiff at trial, Plaintiff admitted that he failed to file any grievances complaining that these specific books were denied on the basis of content.  Accordingly, Plaintiff failed to exhaust administrative remedies, and the PLRA forecloses his claims under the First Amendment alleging improper denials of those publications.

## II.     Procedural Due Process Claim

At trial, Plaintiff sought to establish that he was denied procedural due process because he was not offered an opportunity to directly appeal the content-based denial of publications to a committee appointed by the Superintendent of the Georgia Department of Corrections ("GDC").  Rather, his only avenue for redress was through the prison's three-tiered grievance procedure, which he claims was itself constitutionally insufficient because it did not provide for meaningful review. Defendants claimed entitlement to qualified immunity on Plaintiff's claims alleging deprivation of procedural due process.  For the reasons provided below, the Court agrees that Defendants are entitled to qualified immunity.

### A.     Qualified Immunity

To be entitled to qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the

---

[4] See Exhibits B, U, V, to 24th Aff. Daker [258-5]; Id. ¶ 29.

allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  The burden then shifts to the plaintiff.  Id.  There is a two-part test to determine whether a defendant is entitled to qualified immunity.  First, a court asks " 'whether [the] plaintiff's allegations, if true, establish a constitutional violation.' " Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).  Second, after sufficiently stating a constitutional violation, a court must ask whether the right was "clearly established." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)  A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  The salient question is whether the state of the law at the time of the alleged violation gave officials "fair warning" that their acts were unlawful.  Hope, 536 U.S. at 740; Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003); see also Vinyard, 311 F.3d at 1350-53 (articulating a tripartite analytical framework for ascertaining whether right is "clearly established").

There is no question in this case that Defendants were acting within the scope of their discretionary authority at all relevant times to this litigation.  Thus, the Court turns to determine whether Plaintiff has come forth with sufficient

evidence that Defendants violated Plaintiff's procedural due process rights, and, if so, whether the law at the time gave officials fair warning that their conduct was unlawful.

### B.   Requirements of Procedural Due Process

Prisoners are entitled to "minimum procedural safeguards" in the context of decisions to exclude materials otherwise protected under the First Amendment. See Procunier v. Martinez, 416 U.S. 396, 417, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974), overruled on other grounds by Thornburgh, 490 U.S. at 413-14.  The reason for such protection is that the interest in communications and access to information is "plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment."  Id. at 418.  In this Circuit, such due process protections entail: "(1) appropriate notice, (2) a reasonable opportunity to challenge the initial decision, and (3) an ultimate decision by a disinterested party not privy to the initial censorship decision."  Guajardo v. Estelle, 580 F.2d 748, 762 n.10 (5th Cir. 1978).[5] Applying these requirements, the Eleventh Circuit in Owen v. Willie, 117 F.3d

---

[5] The U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the U.S. Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

1235, 1237 (11th Cir. 1997), approved of a procedure in which a notice was sent to the prisoner stating that the mail had been received and was being held with the prisoner's property, pending release from the correctional facility. Prisoners dissatisfied with the prohibition of certain items could file an internal grievance, which itself provided for three levels of review. Id.

C.    Direct Appeal Publications Review Committee

At trial, Plaintiff offered evidence that, during Plaintiff's incarceration, the GDC required its prison wardens to offer a specific process by which inmates could appeal the rejection of publications by prison officials. (See Def. Ex. 11.) Standard Operating Procedure No. IIB04-0001, entitled "Inmate Mail and Receipt of Funds,"[6] authorized a prison warden or his designee to "reject" or "impound" a publication mailed to a prisoner if the publication met certain specific criteria for rejection. (Id.) The SOP provided:

> The Warden/Superintendent or designee will impound/reject and not issue to inmates any publication found to be inadmissible pursuant to the criteria [set forth in the SOP]. The decision to impound or reject a publication must be made within three (3) work days of the receipt of

_____

[6] The record contains various versions of the Standard Operating Procedures ("SOPs") relating to rejection of prisoner mailings. Two were in effect at the time relevant to this litigation. Standard Operating Procedures Reference No. IIB04-0001, effective June 1, 2002, was enacted on June 1, 2002 and remained effective until March 1, 2004. The second SOP, containing the same title, was enacted on March 1, 2004, to replace the June 1, 2002 version. Both contain materially the same rules concerning the rejection of prisoner publications. (See Def. Ex. 11.)

the publication at the facility/center.

. . . .

When a publication is impounded/rejected by a facility/center because of subject matter content . . . the publication will be treated as having been found to be detrimental to the security, order, disciplinary or rehabilitative interests of the Department.

If a facility/center cannot determine, utilizing the criteria [set forth in the SOP], the publication will be impounded for review by the [PRC]. Any facility/center to impound a publication for the purposes of further review by the Publication Review Committee will be responsible for immediately notifying the Facilities Division representative . . . by email . . . . Note: Do NOT forward any publications for review by the Publications Review Committee unless notified to do so by the Facilities Division Representative.

(Def. Ex. 11, SOP IIB04-0001 § VI, ¶¶ I-3; I-5, I-6.)

Thus, under the SOP, if the prison official determined that the publication constitutes contraband, the rule provided that he may "reject" the publication and require the prisoner to dispose of it accordingly. But, if the official could not determine whether the publication should be allowed or rejected, the regulation provided that he may "impound" the book for review by a publications review committee ("PRC") appointed by the Superintendent of the GDC. The official was not required to forward the publication to the PRC until requested to do so by the PRC.

The SOP also required that the prison official, upon denying a book based upon content, provide the prisoner written notice containing the reasons for the denial, and allow the prisoner an opportunity to appeal the rejection.  The procedure contemplates that the prisoner would use the same form for his appeal as the form provided to the prisoner containing the reasons for the prison official's denial of the publication, and that form would be directly forwarded to the PRC:

> Any publications which are determined by the personal inspection of the Warden/Superintendent or his/her assistant to be [a] threat to the security, discipline or good order of the institution . . . can be excluded by the Warden/Superintendent.  This decision will remain in force until such time the inmate makes an appeal.  Notice shall be given to the inmate of the Warden[']s decision.   The inmate may submit in writing to the Warden/Superintendent reasons for authorizing receipt of the publication utilizing the ['Mail Items Rejection Form']."  These written reasons shall be forwarded to the [PRC] with the Warden/Superintendent[']s reasons for exclusion of the publication utilizing [the 'Mail Items Rejection Form'].  Notice of final determination made by the [PRC] shall similarly be given to the inmate upon receipt by the Warden/Superintendent.

(Def. Ex. 11, SOP IIB04-0001 § VI, ¶ J.)

### D.    The Grievance Procedure

Plaintiff's evidence also established that a separate grievance procedure existed at the prisons in which he was incarcerated by which inmates could aggrieve content-based denials of publications.  The "Statewide Grievance Procedure" allowed prisoners to aggrieve "any condition, policy, procedure or

action (or lack thereof) directed toward inmates over which the Georgia Department of Corrections has control," save for several exceptions not applicable in this case.   (See Def. Ex. 12, SOP IIB05-0001 § VI, ¶ B-1, effective May 1, 2003.)  Pursuant to the grievance procedure, the prisoner was allowed at any time and for any reason to request a grievance form, document a grievance, and file it with the inmate's assigned counselor, who is responsible for investigating the grievance.[7]  The counselor, in turn, forwarded a report containing the grievance and his or her investigation to a Grievance Coordinator.  The Grievance Coordinator, appointed by the Warden to supervise the grievance process, was charged with the duty responsibility to gather all information that is necessary to resolve a particular grievance.[8]  The Grievance Coordinator made a

---

[7] Plaintiff was intimately familiar with the grievance procedure.  He filed ten grievances during his incarceration at Hancock State Prison and over forty grievances during his incarceration at Central State Prison.  (Def. Ex. 9.)

[8] The relevant SOP provides that the Grievance Coordinator's duties are as follows:

a.     See that the procedure is properly applied and complied with;

b.     See that informal attempts to resolve complaints and conflicts are utilized wherever possible;

c.     See that the Inmate Grievance Management System database is properly maintained;

d.     See that all necessary information, witness statements, and documentation are obtained and considered;

recommendation concerning the Grievance and submitted it to the Warden.  Within

thirty calendar days of the date the grievance was filed, the Warden issued his

response.  (Id. ¶ D-5(e-j).

Upon denial of the prisoner's formal grievance by the Warden, the inmate

was provided an opportunity to appeal to the Superintendent of the GDC or his

designee.  (Id. ¶ D-5(o).)  Appeals of grievances concerning the denial of

publications based upon content were forwarded to the Publications Review

Committee.[9]

### E.    Plaintiff's Claims

1.    *Plaintiff Was Not Denied Process*.

Plaintiff alleges that during his incarceration at Hancock State Prison and

Central State Prison, Defendants failed to comply with the procedures mandated by

---

e.      See that all records and documentation relevant to inmate grievances
        are retained as provided in this procedure;

f.      Coordinate the timely investigation of grievances.

(Def. Ex. 12, SOP IIB05-0001 § VI, ¶¶ D-2, D-3, effective May 1, 2003.)

[9] Rick Jacobs, GDC Director of Special Operations, and William F. Amideo, GDC General Counsel, both served on the PRC.  Both testified that, although the preferred procedure was to directly appeal a denial of a publication to the Superintendent (and thus, the PRC), the three-tiered grievance procedure was also available to inmates to appeal a content-based denial of a publication.  Following the denial of the informal grievance and formal grievance, the appeal would be directed to the Superintendent of the PRO and forwarded to the PRC.

the "Inmate Mail and Receipt of Funds" SOP, which required a prison official to impound a publication pending a prisoner's direct appeal to the PRC.  In so doing, Plaintiff claims Defendants' violated Plaintiff's procedural due process rights.

State procedural rules, however, do not define the contours of the process required under the Fourteenth Amendment to accompany the denial of a publication to a prisoner.  See Olim v. Wakinekona, 461 U.S. 238, 250-51 & n.12, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983).  In this Circuit, the requisite "minimum procedural safeguards," Procunier v. Martinez, 416 U.S. at 417,  include (1) appropriate notice, (2) a reasonable opportunity to challenge the initial decision, and (3) an ultimate decision by a disinterested party not privy to the initial censorship decision.  Guajardo, 580 F.2d at 762 n.10.  In this case, the grievance procedure, on its face, meets the requirements of procedural due process.  The evidence establishes that Plaintiff was provided written notice of the denial of publications at issue in this litigation and was able to challenge that denial through the grievance procedure.  The grievance procedure allows an appeal to the Superintendent or his designee, who is not privy to the initial decision to reject a publication and who has authority to overturn the Warden's decision.  See Owen, 117 F.3d at 1237 (approving of similar procedure as consistent with strictures of Fourteenth Amendment); see also Hopkins v. Collins, 548 F.2d 503, 504 (1st Cir.

15

1977) (grievance procedure which allows appeal to prison commissioner sufficient to meet standards of <u>Procunier</u>).  Since the evidence at trial indisputably showed that the grievance procedure was made available to Plaintiff at all times relevant to this litigation,[10] the Court rejects Plaintiff's contention that Defendants' failure to provide, pursuant to the procedure established by the SOP, a direct appeal to the PRC, by itself demonstrates a constitutional violation.  Plaintiff was not *denied* process; to the contrary, he was provided written notice of the denial of all publications at issue and an opportunity to appeal to the Superintendent of the GDC vis-a-vis the prison grievance procedure.

      2.     *To the Extent Plaintiff Was Denied Sufficient Process, Defendants are Entitled to Qualified Immunity.*

Plaintiff also claims that the grievance procedure in this case was constitutionally insufficient because, at least on one occasion,[11] he was denied

---

[10] It appears that Plaintiff may also have alleged that Defendant Enoch Waters denied Plaintiff procedural due process at Dodge State Prison by failing to offer Plaintiff an opportunity to appeal a content-based denial of six publications during his transfer from Hancock State Prison to Dodge State Prison.  Nevertheless, the evidence at trial was undisputed that Plaintiff was provided actual notice of any content-based denial by Defendant Waters.  Further, Plaintiff offered no evidence at trial that Defendant Waters was responsible for the grievance procedure at Dodge State Prison.  Because Plaintiff failed to demonstrate that Defendant Waters caused any denial of process at Dodge State Prison,  Defendant Waters is entitled to qualified immunity.

[11] Although the extent of Plaintiff's numerous allegations of denial of procedural due process was never made fully clear during Plaintiff's presentation of evidence at trial, it suffices to say that Plaintiff has brought claims of similar substance against the remainder of Defendants.  He similarly alleges that their failure to provide him an opportunity to directly appeal to the PRC, or failure to impound rejected publications

meaningful review upon his appeal of a grievance to the Superintendent.

At trial, the evidence showed that, on April 6, 2005, Plaintiff was denied the book *Tao of Sexology* by Officer Juanita Thorpe at the instruction of Warden Stephen Benton because it contained sexually explicit content.[12]  (Def. Ex. 4.) Officer Thorpe provided Plaintiff a "Mail Items Rejection Form" stating that the reason the book was denied was because of sexually explicit content.  Plaintiff, in turn, acknowledged that he had received notice of the denial, and checked the box requesting a direct appeal of the denial to the PRC.  Plaintiff wrote that the book contains literary, artistic, scientific, or other redeeming value and thus should be allowed in prison.  Nevertheless, the book was not impounded for review by the PRC.

Plaintiff then filed an informal and a formal grievance, complaining that the book should not have been denied based upon content, and that he was denied the

---

pending an eventual grievance appeal, constituted a denial of procedural due process. These claims are identical to his claims against Defendants Benton and Thorpe concerning the denial of *Tao of Sexology* discussed below.  Thus, the Court resolves the remainder of Plaintiff's procedural due process claims in the same manner and for the same reasons as those provided in discussing the procedures afforded to Plaintiff upon the denial of *Tao of Sexology*.

[12] In a prior Order, the Court held that the denial of *Tao of Sexology* was consistent with the First Amendment because it was reasonably related to legitimate penological interests.  See Daker II, 506 F. Supp. 2d at __ ("Because a prison official could reasonably conclude based on the title of [*Tao of Sexuality*], or a cursory review of its content, that [it] contains content which may encourage sexually deviant behavior and may lead to violence among inmates and other internal security problems, Plaintiff has failed to allege a constitutional violation . . . .").

appropriate procedure to appeal the denial to the PRC.  Both grievances were

denied.  In denying the formal grievance, Warden Benton wrote that, "Institutions

have been instructed that only if a facility cannot determine admissibility is the

publication to be impounded for review by the PRC. . . . Since the publication in

question met the criteria for rejection, there is no need to contact the PRC for

review.  Follow institutional procedures for disposing of the publication.

Grievance is denied."  (Def. Ex. 4.)  Plaintiff then appealed the denial of that

grievance to the Superintendent in Atlanta.  On June 30, 2005, the Manager of the

Inmate Affairs Unit, Raymond Head, denied Plaintiff's appeal, stating that the

appeal could not be considered because Plaintiff had a visitor pick up the

publication two days after he submitted his formal grievance, on April 17, 2005.

(Id.)  Plaintiff alleges that both Defendants Thorpe and Benton denied him

procedural due process by failing to impound the *Tao of Sexology* such that the

PRC could meaningfully review its content.

    As an initial matter, the Court recalls the limited nature of Plaintiff's claims

at issue in this case, which are brought exclusively against Defendants in their

individual capacities for damages.  As the Court has previously recognized,

although Plaintiff's allegations "suggest[] a broad facial attack," the case has been

narrowed substantially due to the mootness of his claims for injunctive relief, and

18

is therefore limited to his claims for damages "based on particular instances in which enforcement of the challenged prison regulations allegedly interfered with his constitutional rights." Daker I, 475 F. Supp. 2d at 1359 (quoting Wardell v. Duncan, 470 F.3d 954, 954 (10th Cir. 2006)). The limited nature of Plaintiff's action for monetary relief requires Plaintiff to demonstrate that a particular official acted with deliberate indifference to his rights under the Fourteenth Amendment. Daniels v. Williams, 474 U.S. 327 (1986); see also Cannon v. Macon County, 1 F.3d 1558 (11th Cir. 1993); West v. Tillman, 496 F.3d 1321 (11th Cir. 2007). Although it is not necessary for the plaintiff to demonstrate that the prison official knew he was denying a constitutional right, Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991), Plaintiff must demonstrate that any particular prison official's failure to afford Plaintiff sufficient process amounted to more than mere negligence. Daniels v. Williams, 474 U.S. 327, 332-34, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).

Here, Plaintiff essentially suggests that Defendants' failure to impound certain publications for review by the Superintendent upon appeal of his grievances amounted to an unconstitutional deprivation of his rights under the Fourteenth Amendment. Although the Court recognizes that the failure to impound a publication for review by a neutral decisionmaker may render any appeal

ineffective—as demonstrated by Plaintiff's appeal of Warden Benton's denial of the *Tao of Sexology*—Plaintiff must demonstrate that the actions of the named Defendants in this case in failing to impound that publication rose beyond mere negligence.  Daniels, 474 U.S. at 332; see also Sorrels v. McKee, 290 F.3d 965, 973 (9th Cir. 2002) (finding that failure to notify prisoner of rejection of publication "constitutes at most negligence and does not state a due process violation under § 1983").  Here, Plaintiff has made no such showing.  To the contrary, the evidence in this case reflects that shortly after Plaintiff's appeal concerning the *Tao of Sexology*, Warden Benton instituted a procedure by which inmates could directly appeal denials of publications to the PRC, and accordingly, directed his staff to impound publications pending review.  See West, 496 F.3d at 1330 (noting that corrective action to rectify alleged constitutional insufficiency militates against finding of deliberate indifference).  And in light of the Court's view that certain publications—including the *Tao of Sexology*—may reasonably be denied based upon title alone, see supra note 12, the Court cannot conclude that Defendants' failure to impound the *Tao of Sexology* or the other publications at issue in this litigation for review by a neutral decisionmaker amounts to a violation of Plaintiff's rights under the Fourteenth Amendment.

Moreover, Plaintiff has failed to demonstrate that Defendants' actions were the *cause* of any deprivation of a meaningful review of the original decisionmaker's denial of the *Tao of Sexology*.  Pursuant to the Statewide Grievance Procedure, and as established by the evidence in this case, it is the responsibility of the Grievance Coordinator to "[s]ee that all records and documentation relevant to inmate grievances are retained."[13]  (See Def. Ex. 12, SOP IIB05-0001 § VI, ¶ B-1, effective May 1, 2003.)  Neither Warden Benton nor Officer Thorpe, nor any other Defendant in this case, acted as a Grievance Coordinator with the responsibility to collect relevant evidence for consideration by the Superintendent upon the appeal of a grievance.  Defendants were not charged with the duty to retain relevant documentation for purposes of the proper resolution of Plaintiff's grievances.  See West, 496 F.3d at 1330 n.12 (noting, in finding that prison official had qualified immunity, that official was not responsible for correcting problem at issue).  Accordingly, Plaintiff has failed to demonstrate that any Defendant in his case directly participated in, or caused, any constitutional violation.

Finally, even if the Court were to assume that Plaintiff has come forth with sufficient evidence against the named Defendants demonstrating that their actions

---

[13] See supra n. 8.

caused Plaintiff to suffer a deprivation of due process, Plaintiff has failed to meet his burden of demonstrating that the officials were on fair notice that their conduct constituted a due process violation.  In some circumstances, a denying official need not review the inner contents of a publication if the publication contains a provocative title which alone provides reasons for reasonably excluding it from a prisoner's possession.  See Daker I, 475 F. Supp. 2d at 1353-55; Duamutef v. Hollins, 297 F.3d 108, 112 (2d Cir. 2002) (prison official may, under certain circumstances, reasonably deny a publication based on title alone).  Thus, it is debatable whether the reviewing official may similarly reject an appeal based upon title alone.  Although authority in other jurisdictions may support Plaintiff's contention that meaningful process requires that the reviewing official retain the publication at issue for consideration of its entire contents, Martin v. Kelley, 803 F.2d 236, 244-45 (6th Cir. 1986), the law in this Circuit is not clearly established in that regard.  Because Plaintiff has failed to cite to this Court binding authority which would provide Defendants in this action with fair notice that the grievance procedure available to Plaintiff was constitutionally insufficient under the Fourteenth Amendment, Defendants are entitled to qualified immunity.

**Conclusion**

For the foregoing reasons, Defendants Chatman, Perry, Jarriel, McNeal, Hall, Harris, and Thorpe's Oral Motion for Judgment as a Matter of Law is **GRANTED**.

**SO ORDERED** this  31st  day of October, 2007.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE